IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RODNEY FISHER, as the surviving son of decedent, CAROL ROBINSON,<br><br>Plaintiff,<br><br>v.<br><br>N & R OF NEW MADRID, LLC AND HEALTH SYSTEMS, INC.<br><br>Defendants. | Case No: 4:24-cv-215<br><br>JURY TRIAL DEMANDED |

PLAINTIFF'S COMPLAINT

The Plaintiff, by and through undersigned counsel, submit this Complaint for Damages against the above-named Defendants, and in further support, states and alleges as follows.

PLAINTIFF

1. Carol Robinson ("Resident") died on July 20, 2023, from an avoidable pressure ulcer that developed at N & R of New Madrid, LLC a Missouri skilled nursing facility located at 1050 Dawson Road, New Madrid, MO 63869 ("The Facility).

```
CAUSE OF DEATH (ICD CODE): L899      MANNER: NATURAL

SEPTIC SHOCK
DECUBITUS ULCER INFECTION

AMENDED-AUTH.: CHAPTER 193 RSMO
DATE OF DEATH AMENDED BY AFFIDAVIT
```

2. Plaintiff, Rodney Fisher, is, and always relevant hereto, an adult over the age of 21 and a citizen of the state of Texas.

3. Decedent Carol Robinson was a citizen of the state of Missouri at the time of her death.

1

4. Rodney Fisher is a surviving child of Resident, and therefore, a member of the class of individuals authorized to pursue a wrongful death claim pursuant to RSMo. § 537.080.

## DEFENDANTS

5. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

### N & R OF NEW MADRID, LLC

6. At all times relevant, N & R OF NEW MADRID, LLC was a Missouri company and owned, operated, managed, maintained, and/or controlled, in whole or in part, and did business as N & R OF NEW MADRID, LLC ("Facility" or "the Facility") which is a Missouri licensed nursing home located at 1050 Dawson Road, New Madrid, MO 63869.

7. As such, N & R OF NEW MADRID, LLC was engaged in providing ancillary medical services to persons requiring such services, including Resident, by owning, operating, managing, maintaining, and controlling N & R OF NEW MADRID, LLC

8. Consequently, N & R OF NEW MADRID, LLC, owed a duty to Resident to use reasonable care for Resident's safety while under the care and supervision at N & R OF NEW MADRID, LLC

### HEALTH SYSTEMS, INC.

9. HEALTH SYSTEMS, INC., was incorporated in Missouri and its principal place of business is in Missouri.

10. HEALTH SYSTEMS, INC., has been always relevant to this action a citizen of Missouri.

11. At all times relevant to this action, HEALTH SYSTEMS, INC., and/or individuals or entities acting on its behalf, operated, managed, maintained, and/or controlled, in whole or in part, N & R OF NEW MADRID, LLC.

12. HEALTH SYSTEMS, INC., and/or individuals or entities acting on its behalf, operated, managed, maintained, and controlled N & R OF NEW MADRID, LLC by exercising final authority over:

   a. Staffing budgets;
   b. The development and implementation of nursing policies and procedures;
   c. The hiring and firing of the administrator; and
   d. Appointing the governing body that is legally responsible for establishing and implementing policies regarding the management and operation of N & R OF NEW MADRID, LLC

13. These actions and business decisions had a direct impact on the care provided to all residents including Resident.

14. Consequently, HEALTH SYSTEMS, INC., owed a duty to Resident to use reasonable care for Resident's safety while under its care and supervision at N & R OF NEW MADRID, LLC and breached said duty for all the reasons stated in this Complaint.

## JURISDICTION AND VENUE

15. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

16. HEALTH SYSTEMS, INC., is a Missouri corporation with its principal place of business in Missouri.

17. Thus, HEALTH SYSTEMS, INC., is a citizen of the state Missouri

18. N & R OF NEW MADRID, LLC is a Missouri corporation with its principal place of business in Missouri.

19. Thus, N & R OF NEW MADRID, LLC is a citizen of the state Missouri

20. Plaintiff is is a citizen of Texas.

21. Therefore, Plaintiff brings his claims contained in the Complaint under federal diversity jurisdiction, 28 U.S.C. § 1332(a)(1), as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

22. Pursuant to RSMo § 506.500.1(3), defendants, purposefully availed themselves of the protections and/or benefits of the laws in Missouri by committing tortious acts within the state including, but not limited to, failing to ensure that N & R OF NEW MADRID, LLC had appropriate policies and procedures for its nursing staff, was properly capitalized, funded, staffed, and that staff received adequate training and supervision, thereby making jurisdiction proper in this Court.

23. A substantial part of the events or omissions giving rise to the claims described in the Complaint occurred in this District of Missouri, thereby making venue proper in this Court.

## AGENCY

24. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

25. The acts hereinafter described were performed by the agents, representatives, servants, and employees of Defendants and were performed either with the full knowledge and consent of Defendants, and/or were performed by their agents, representatives, servants, or employees during the scope of their agency, representation, or employment with the Defendants.

26. Furthermore, the acts hereinafter described as being performed by the agents, representatives, servants, or employees of Defendants were performed or were supposed to be performed on behalf of and/or for the benefit of Resident.

## FACTUAL BACKGROUND

27. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

### Defendants' Treatment of Resident

28. Upon admission to N & R OF NEW MADRID, LLC, Resident was at risk for developing skin breakdown, and pressure ulcers.

29. Failure of N & R of New Madrid, LLC staff to offload Resident's sacral/coccyx and heels areas caused development and progression of pressure injuries in these areas.

30. Skin subjected to prolonged contact with urine and feces is more likely to break down.

31. The sacral/coccyx pressure injury became infected, requiring hospitalization and antibiotic treatment. Sacral pressure injury infection resulted in severe sepsis/bacteremia.

32. None of N & R OF NEW MADRID, LLC staff, nor any other defendants conducted a Resident assessment to identify Resident's risk of developing skin breakdown.

33. Despite Resident's risk, none of N & R OF NEW MADRID, LLC staff, nor any other defendants implemented a Care Plan to address Resident's risk of developing a pressure ulcer nor did they implement a turning and repositioning program to offload the pressure on Resident's skin.

34. None of N & R OF NEW MADRID, LLC staff:

   a. Properly assessed Resident's developing skin breakdown or pressure ulcers;

   b. Implemented or provided the appropriate interventions to prevent Resident from developing a pressure ulcer or allowing Resident's pressure ulcer to get worse, including turning or repositioning Resident to offload the pressure on Resident's skin;

   c. Monitored or evaluated Resident's Care Plan to see if the interventions prescribed were working; or

   d. Monitored Resident's urine, skin condition, including Resident's pressure ulcer or measure its size during this time frame.

35. At no point while Resident was a resident at N & R OF NEW MADRID, LLC did any of N & R OF NEW MADRID, LLC management, including the Administrator, the Director of Nursing, the clinical education coordinator, anybody from N & R OF NEW MADRID, LLC, AND HEALTH SYSTEMS, INC., or any other staff member ever provide any sort of in-service training or clinical education to N & R OF NEW MADRID, LLC staff regarding the assessment, prevention, use of interventions, monitoring, and reporting of pressure ulcer or skin breakdown in residents like Resident.

36. At no point while Resident was a resident at N & R OF NEW MADRID, LLC did any of N & R OF NEW MADRID, LLC management, including the Administrator, the Director of Nursing, the clinical education coordinator, anybody from N & R OF NEW MADRID, LLC, and HEALTH SYSTEMS, INC., or any other staff member ever implement the appropriate policies and procedures at N & R OF NEW MADRID, LLC regarding the assessment, prevention, use of interventions, monitoring, and reporting of pressure ulcer in residents like Resident.

37. While Resident was a resident at N & R OF NEW MADRID, LLC, N & R OF NEW MADRID, LLC did not have an adequate number of staff working daily at N & R OF NEW MADRID, LLC to meet Resident's needs, perform the interventions required to prevent Resident's avoidable pressure ulcer or prevent the progression of Resident's pressure ulcer, or monitor and adequately supervise Resident's condition.

### Undercapitalization/Underfunding at N & R OF NEW MADRID, LLC

38. Health Systems, Inc., and N & R of New Madrid, LLC had a duty to provide financial resources and support to N & R OF NEW MADRID, LLC in a manner that would ensure that each of their residents received the necessary care and services and attain or maintain the highest practicable physical, mental, and psychosocial well-being, consistent with their residents' comprehensive assessments and plans of care.

39. Health Systems, Inc., and N & R of New Madrid, LLC had a duty to provide sufficient financial resources to ensure there was enough properly trained and supervised staff to meet the needs of their residents.

40. N & R OF NEW MADRID, LLC had no autonomy to decide their own financial course, including no authority to determine how much staff they could provide or what resources were available to the staff.

41. No individuals at N & R OF NEW MADRID, LLC are involved in decision making about the financial operations or what its resources were and where they would be spent.

42. Transactions directed by HEALTH SYSTEMS, INC., left N & R OF NEW MADRID, LLC with insufficient cash to provide sufficient qualified staff to meet the individual needs of the residents in their N & R OF NEW MADRID, LLC during Resident's time there.

## LEGAL BASIS FOR HEALTH SYSTEMS, INC.'S LIABILITY

43. HEALTH SYSTEMS, INC is collectively referred to herein as the "Corporate Defendant."

44. The Corporate Defendant directed, operated, and managed the day-to-day functions of their nursing facilities – including N & R OF NEW MADRID, LLC – by developing and implementing policies, practices and procedures affecting all facets of N & R OF NEW MADRID, LLC, including resident care.

45. These policies manipulate and control the physical and financial resources and prohibit decision making at N & R OF NEW MADRID, LLC's level.

46. This directly affects resident care by determining things such as what type and quality of nourishment is available for residents; what safety measures may and may not be used depending upon cost; the integrity of the building itself; and most importantly, how much staff is available to provide resident care and how well trained and supervised are the staff to meet the needs of the residents.

47. These policies and practices were developed and implemented without regard to the needs of the residents and, in fact, mandated the reckless disregard for the health and safety of N & R OF NEW MADRID, LLC's residents.

48. The Corporate Defendant affirmatively chose and decided to establish such operations and demand they be implemented.

49. Upon information and belief, such operations included, *inter alia*, the following dangerous policies and practices: (a) the aggressive recruitment and admission of high acuity patients to increase the patient census when Defendants had already chosen to understaff N & R OF NEW MADRID, LLC and continually maintain a staff that were not qualified nor competent to provide the care required by state law, regulations and minimum standards of the medical community; and (b) the decision to retain residents whose needs exceeded the qualification and care capability of N & R OF NEW MADRID, LLC's staff.

50. The Corporate Defendant consciously chose not to implement safety policies, procedures and systems which would ensure that: (a) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (b) treatment/care prescribed by a physician was provided in accordance with state laws and professional standards.

## Direct Participation/Individual Actions

51. The Corporate Defendant was always material to this lawsuit in the business of managing and operating a network of nursing homes throughout the State of Missouri. One such nursing home was N & R OF NEW MADRID, LLC where Resident was admitted for care and treatment.

52. At all times material to this lawsuit, the Corporate Defendant was fully aware that the delivery of essential care services in each of their nursing homes – including N & R OF NEW MADRID, LLC – hinged upon three fundamental fiscal and operational policies which were dictated by their choices on establishing and implementing such policies: (1) the determination of the numbers and expenditures on staffing levels; (2) the determination of the census levels within the nursing home; and, (3) payor mix.

53. At all times material, the Corporate Defendant made critical operational decisions and choices which manipulated and directly impacted N & R OF NEW MADRID, LLC's revenues and expenditures. More particularly, the Corporate Defendant determined:

   a. The number of staff allowed to work in their chains of nursing homes including N & R OF NEW MADRID, LLC;

   b. The expenditures for staffing at the nursing homes including N & R OF NEW MADRID, LLC;

   c. The revenue targets for each nursing home including N & R OF NEW MADRID, LLC;

   d. The payor mix, and census targets for each nursing home including N & R OF NEW MADRID, LLC;

   e. Patient recruitment programs and discharge practices at each nursing home including N & R OF NEW MADRID, LLC

54. All cash management functions, revenues and expenditure decisions at the nursing home level – including N & R OF NEW MADRID, LLC – were tightly managed, directed, and supervised by the Corporate Defendant.

55. It was the choices made by the Corporate Defendant which directly fixed the circumstances in the facilities and the level of care that could, and was, provided at the homes, including N & R OF NEW MADRID, LLC

56. The Corporate Defendant formulated, established, and mandated the application and implementation of the policies regarding the staffing levels and expenditures, the census levels, and payor mix.

57. The census edicts, marketing and admission practices, and resident discharge policies designed and mandated by the Corporate Defendant was implemented and such application was carefully supervised and enforced.

58. Following the mandates, N & R OF NEW MADRID, LLC functioned in accordance with them, filling empty beds, recruiting high acuity patients, and maintaining a census level and staffing level established and enforced as the Corporate Defendant deemed appropriate.

59. Accordingly, such manipulation by the Corporate Defendant as to staffing and census were motivated by the financial needs of the Corporate Defendant and N & R OF NEW MADRID, LLC as opposed to the acuity levels and needs of the residents as dictated by state and federal laws and regulations.

60. Instead of abiding by their duty to care for the residents, the Corporate Defendant chose to be guided by financial motivation which was simply to increase revenues while restricting and/or reducing expenses.

61. The Corporate Defendant, therefore, directly participated in a continuing course of negligent conduct, requiring N & R OF NEW MADRID, LLC to recruit and retain heavier care, higher pay residents to N & R OF NEW MADRID, LLC even though the needs of the patient population far exceeded the capacity of staff.

62. At the same time, the Corporate Defendant chose to design, create, implement, and enforce operational budgets at N & R OF NEW MADRID, LLC which dictated the level of care that could be provided and therefore deprived residents care, creating widespread neglect.

63. In so doing, the Corporate Defendant disregarded, superseded, and violated the duties and responsibilities imposed on a licensed nursing home, in this case N & R OF NEW MADRID, LLC, by the State of Missouri, and the federal government.

## Corporate Malfeasance

64. The Corporate Defendant consciously chose not to implement safety policies, procedures and systems which would ensure that: (1) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (2) treatment/care prescribed by a physician was provided in accordance with state laws and professional standards.

65. Accordingly, the Corporate Defendant, by their operational choices and decision making, and to satisfy their desire to grow profits, created a dangerous condition that caused harm to residents.

66. These choices to establish and implement such policies and the conscious decision not to implement corrective actions or procedures disregarded the duties which the State of Missouri and federal government imposed upon the Corporate Defendant and N & R OF NEW MADRID, LLC.

67. Because the staffs were below necessary levels, and because the staffs that were present were not properly qualified or trained, the residents at N & R OF NEW MADRID, LLC including Resident, failed to receive even the most basic care required to prevent catastrophic injury and death. This negligence and resulting injuries ultimately led to and caused Resident's injuries and death as described above.

68. During Resident's residency at N & R OF NEW MADRID, LLC, Resident sustained physical injuries and died, as described in more detail above, because of the acts, omissions, decisions, and choices made by the Corporate Defendant in operating N & R OF NEW MADRID, LLC.

69. During Resident's residency at N & R OF NEW MADRID, LLC, the Corporate Defendant negligently failed to provide and/or hire, supervise and/or retain staff capable of providing Resident with a clean, safe, and protective environment, and that, because of this failure, Resident suffered neglect, abuse, severe personal injuries, conscious pain and suffering, and deterioration of Resident's physical condition as further described above. Ultimately, Resident died because of this failure.

70. The Corporate Defendant manages, operates, and directs the day-to-day operations of N & R OF NEW MADRID, LLC and these Corporate Defendant are liable for this direct involvement in the operations of such N & R OF NEW MADRID, LLC These Corporate Defendant are therefore liable to the Plaintiff for the neglect of and injuries to Resident.

71. N & R OF NEW MADRID, LLC and this Corporate Defendant have been named as a Defendant in this lawsuit for their individual and direct participation in the torts and causes of action made the basis of this lawsuit, having:

   a. Chosen to disregard the duties and responsibilities which N & R OF NEW MADRID, LLC, as a licensed nursing home, owed to the State of Missouri and its residents;

   b. Created the dangerous conditions described by interfering with and causing N & R OF NEW MADRID, LLC to violate Missouri statutes, laws and minimum regulations governing the operation of said nursing home;

   c. Superseding the statutory rights and duties owed to nursing home residents by designing and mandating dangerous directives, policies, management, and day to day operation of N & R OF NEW MADRID, LLC;

   d. Caused the harm complained of herein; and

   e. Choosing to disregard the contractual obligations owed to the State of Missouri and the Federal Government to properly care for the residents in exchange for payment of funds for such care.

### COUNT I - (Wrongful Death v. All Defendants)

72. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

73. At all times material hereto Resident was in a defenseless and dependent condition.

74. As a result of Resident's defenseless and dependent condition, Resident relied upon Defendants to provide for their safety, protection, care, and treatment.

75. At the time of the negligent acts and occurrences complained of herein and at all other times relevant hereto, Defendants, and their agents and employees, owed a legal duty to Resident to exercise that degree of skill and learning ordinarily exercised by members of their respective professions under the same or similar circumstances.

76. At all relevant times, Defendants had a duty to act in accordance with the standards of care required of those owning, operating, managing, maintaining, and/or controlling a skilled nursing facility.

77. These duties required Defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of all residents including Resident.

78. These duties required Defendants to have sufficient and qualified staff at N & R OF NEW MADRID, LLC nursing home to ensure the proper care for, and treatment of all residents including Resident.

79. These duties required Defendants to ensure that N & R OF NEW MADRID, LLC's nurses and other staff were properly educated and trained regarding the care for, and treatment of all residents including Resident.

80. These duties required Defendants to ensure that N & R OF NEW MADRID, LLC was properly capitalized to ensure the proper care for, and treatment of all residents including Resident.

81. Specifically, during their care and treatment of Resident, Defendants and their agents, servants, and/or employees breached their duties and were guilty of the following acts of negligence and carelessly by failing to measure up to the requisite standard of care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances, including by:

   a. Failing to adequately assess, monitor, document, treat, and respond to Resident's physical condition as well as Resident's skin condition;

   b. Failing to adequately assess Resident's risk of developing skin breakdown and pressure ulcers;

   c. Failing to have enough staff at the Facility to ensure Resident's needs were being met regarding skin care and pressure ulcer prevention;

   d. Failing to provide adequate assistive devices and interventions to prevent Resident's skin breakdown and pressure ulcers;

   e. Failing to enact and carry out an adequate Care Plan regarding Resident's increased risk for skin breakdown and pressure ulcers;

   f. Failing to provide adequate preventative skin care to Resident;

   g. Failing to provide adequate assistance and assistive devices to prevent Resident's skin breakdown and pressure ulcers;

   h. Failing to appropriately assess and maintain clean and dry skin where Resident developed a pressure ulcer;

   i. Failing to turn and reposition Resident every two (2) hours;

   j. Failing to utilize proper procedures for scheduling of turning and repositioning;

   k. Failing to adequately assess, monitor, ensure, and document the administration of adequate nutrition and hydration to Resident;

   l. Failing to document the measurement of Resident's wounds adequately and concisely for proper and efficient wound treatment, management, and progression;

   m. Failing to prevent the development and worsening of Resident's pressure ulcers;

   n. Failing to adequately, timely and consistently prevent, assess, and treat Resident's pressure ulcer;

o. Failing to have and/or implement appropriate policies and procedures regarding the prevention, assessment, and treatment of pressures ulcers in residents like Resident;

p. Failing to carry out and follow standing orders, instructions, and protocol regarding the prevention of Resident's skin breakdown and pressure ulcers;

q. Failing to ensure the nursing home was properly capitalized.

r. Failing to perform and measure up to the requisite standards of care required and observed by health care providers and further particulars presently unknown to Plaintiff, but which is verily believed and alleged will be disclosed upon proper discovery procedures during this litigation.

82. As a direct and proximate result of the individual and collective acts of negligence of Defendants as described above, Resident was harmed and suffered non-economic damages limited to death, pain, suffering, and mental anguish.

83. As a direct and proximate result of the individual and collective acts of negligence of all Defendants as described above, Plaintiff, suffered non-economic damages limited to loss of companionship, loss of comfort, loss of guidance, loss of counsel and loss of instruction, pain, suffering, and mental anguish.

WHEREFORE, Plaintiff, prays for judgment against Defendants in an amount more than $75,000.00 and in an amount a jury deems fair and reasonable under the circumstances, limited to the noneconomic damages described above.

<u>**PLAINTIFF'S DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE**</u>

Respectfully Submitted,

STEELE LAW FIRM

By: _/s/ Jonathan Steele_
Jonathan Steele MO #63266
2029 Wyandotte, Suite 100
Kansas City, MO 64108
Ph: (816) 466-5947
Fax: (913) 416-9425
jonathan@nursinghomeabuselaw.com

ATTORNEYS FOR PLAINTIFF